IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| INTERNATIONAL UNION OF | : | No.  4:07-CV-1245 |
| BRICKLAYERS AND ALLIED | : | |
| CRAFTWORKERS, LOCAL 5 | : | Judge John E. Jones III |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| BANTA TILE & MARBLE | : | |
| COMPANY, INC. | : | |
| Defendant | : | |

## MEMORANDUM

September 8, 2008

This matter is before the Court on the cross-motions for summary judgment of the plaintiff International Union of Bricklayers and Allied Craftworkers ("BAC"), Local 5 ("Local 5") (Doc. 13) and the defendant Banta Tile & Marble Company, Inc. ("Banta") (Doc. 17).  For the reasons set forth below, Local 5's motion will be granted and Banta's motion denied.

## I.    STANDARD OF REVIEW

Summary judgment is appropriate if the record establishes "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  *Celotex*

1

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial.  *Id.* at 325.  Once the moving party meets its burden, the burden then shifts to the non-moving party to show that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e)(2).   An issue is "genuine" only if there is a sufficient evidentiary basis for a reasonable jury to find for the non-moving party, and a factual dispute is "material" only if it might affect the outcome of the action under the governing law.  *Anderson v. Liberty Lobby, Inc*, 477 U.S. 242, 248-49 (1986).

In opposing summary judgment, the non-moving party "may not rely merely on allegations of denials in its own pleadings; rather, its response must ... set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).  The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial."  *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000).  Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion."  *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985).  However, the facts and all reasonable inferences drawn therefrom must be viewed

in the light most favorable to the non- moving party.  *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir. 1982).  Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; there must be a *genuine* issue of *material* fact to preclude summary judgment."  *Anderson*, 477 U.S. at 247-48.

## II.   BACKGROUND

With this standard of review in mind, the following are the undisputed facts material to the present motions.

The defendant, Banta, is a corporation located in Lancaster, Pennsylvania, which engages in the installation of tile products.  (Pl.'s Statement of Material Facts ["Pl. SMF"], Doc. 15, ¶¶ 3, 7; Def.'s Statement of Material Facts ["Def. SMF"], Doc. 19, ¶ 1.)[1]  On January 28, 1997, Banta's then-president, Jeff Banta,

---

[1] In response to Local 5's statement of undisputed material facts, Banta submitted a counter-statement (Doc. 23) that does not respond to the facts asserted by Local 5, but rather sets forth Banta's version of the facts.  Banta's counter-statement is, in fact, identical to the statement of undisputed material facts submitted in support of its own motion for summary judgment. (*Compare* Doc. 23 *with* Doc. 19.)  Pursuant to Local Rule 56.1, the Court will deem admitted all facts asserted by Local 5 that are not explicitly controverted by Banta's counter-statement.

signed two separate collective bargaining agreements ("CBA").  (Pl.'s SMF ¶ 8.)

The first agreement was between the Associated Tile Contractors of Philadelphia

and Suburbs (the "Association") and the Bricklayers and Allied Craftworkers,

Local 1 ("Local 1"), and had term dates of May 1, 2996 to April 30, 1998 (the

"1996 Tile Agreement").  (*Id.* at ¶ 9.)  The second agreement was between the

Association and Local 1, and had term dates of May 1, 1993 to April 30, 1998 (the

"1993 Finishers Agreement").  (*Id.* at ¶ 12.)  Banta was not a member of the

Association which negotiated these CBAs with Local 1, but nonetheless, signed the

agreements as an independent signatory employer.  (*Id.* at ¶¶ 10, 12.)

Both the 1996 Tile Agreement and the 1993 Finishers Agreement contain

"evergreen" clauses which provide that the agreements will remain in effect unless

certain conditions are met.  Specifically, the agreements provide:

> This Agreement shall remain in full force and effect through April 30, 1998 and shall continue thereafter unless there has been given not less than ninety (90) days written notice by Registered or Certified Mail, by either party hereto, of the desire to modify and amend this Agreement through negotiations.  In the absence of such notice, the Employer and the Union agree to be bound by the area wide negotiated contracts with the Associated Tile Contractors of Philadelphia and Suburbs and extending this Agreement for the life of the newly negotiated contract.

---

Banta's counter-statement violates both the spirit and letter of Local Rule 56.1, which is designed to assist the Court in resolving summary judgment motions, and regrettably for Banta, these admissions are the product of that violation.

4

(*Id.* at ¶¶ 11, 13.)  In 1998 and again in 2001, the Association and Local 1 entered into successor agreements to the 1996 Tile Agreement and the 1993 Finishers Agreement which contained the same evergreen clauses.  (*Id.* at ¶¶ 15-17, 19.)  At no time did Banta or Local 1 provide notice of a desire to modify or amend the agreements.  (*Id.* at ¶¶ 14, 18, 21.)

In 2004, the Association and Local 1 negotiated a successor agreement to the tile and finishers agreements, which contains the following traveling contractors clause:

> When the Employer has any work of the type covered by this Agreement to be performed outside of the area covered by this Agreement and within the area covered by a standard Collective Bargaining Agreement of another affiliate of the International Union of Bricklayers and Allied Craftworkers, the Employer agrees to abide by the full terms and conditions of the standard Agreement in effect on the job site area with respect to all employees, wherever hired, who perform such work, except as provided in the next sentence of this paragraph.  Employees, covered by this Agreement who are sent to projects out-side of the area covered by this Agreement shall be paid at least the established minimum wage scale required under this Agreement but in no case less than the established minimum wage scale of the local Agreement covering the territory in which such work is being per-formed plus all contributions specified in the job site local Agreement.  If employees are sent to work on a project in an area where there is no local Agreement covering the work which falls within the scope of this Agreement, the full terms and conditions of this Agreement will apply.

(*Id.* at ¶ 23.) The purpose of this provision is to require signatory employers who perform work outside of the jurisdiction of Local 1 to comply with the standard CBA in effect within the jurisdiction of another BAC local. (*See id.* at ¶¶ 24-29.)

Plaintiff Local 5 is a BAC local representing tile workers within its jurisdiction. (*Id.* at ¶ 1.) At one time, Local 5 represented Banta's employees; however, after ownership of the company changed, Banta terminated the CBA between it and Local 5, effective April 30, 2006. (*See* Def. SMF ¶¶ 3-8.) Local 5, however, is a party to one standard CBA with all employers within its jurisdiction which covers the period May 1, 2006 to April 30, 2010. (Pl. SMF ¶¶ 30-31.) Sometime after May 1, 2006, Local 5 discovered that Banta was performing work within its jurisdiction without complying with the terms of the Local 5 standard CBA. (*Id.* at ¶ 32.) On August 4, 2006, Local 5 filed a grievance alleging Banta's violation of the traveling contractors clause of the Local 1 CBA. (*Id.* at ¶ 33; Def. SMF ¶¶ 9, 11.)

After the grievance went unresolved, the matter was submitted to arbitration before Arbitrator Joan Parker pursuant to the Rules of Voluntary Labor Arbitration of the American Arbitration Association. (Pl. SMF ¶¶ 35-38; Def. SMF ¶ 13.) The arbitrator found in Local 5's favor, and on April 11, 2007 issued an award which states in relevant part:

The grievance is sustained.  From the date of this Award, the Company shall apply all terms and conditions of the 2006 Local 5 Agreement for all work performed within the Union's jurisdiction until the expiration of the 2004 Local 1 Agreement.  In addition, the Company shall make whole those employees who have performed work within the Union's jurisdiction by paying any wages and benefits to which they were entitled, but which they did not receive for the period of May 1, 2006 to the date of this Award.

(Pl. SMF ¶ 39; Def. SMF ¶ 14.)   On July 10, 2007, Local 5 filed this action seeking enforcement of the arbitration award.  (Doc. 1.)

## III.   DISCUSSION

Local 5's motion for summary judgment seeks judicial enforcement of the arbitrator's award.  Banta's motion for summary judgment raises defenses to the enforcement of the award, including that the arbitrator's interpretation of the CBA provisions at issue was incorrect and that the award creates a conflict with the National Labor Relations Act and the Employee Retirement Security Act.  The Court need not, and in fact cannot, reach the merits of these arguments, however, because Banta has not timely raised these defenses.

The Court has jurisdiction over this action to enforce a labor arbitration award pursuant to § 301 of the Labor Management Relations Act.  Section 301 does not contain its own statute of limitations, and therefore, "the most analogous state statute of limitations should be adopted as federal law."  *Office & Prof'l Employees Int'l Union, Local No. 471 v. Brownsville Gen. Hosp.*, 186 F.3d 326,

336 (3d Cir.1999) (citing *Int'l Union, United Auto., Aerospace and Agr. Implement Workers of America, AFL-CIO v. Hoosier Cardinal Corp.*, 383 U.S. 696, 704-05 (1966)).  Under Pennsylvania law, a party has thirty days to initiate an action to vacate, modify, or correct an arbitraton award.  *See Serv. Employees Int'l Union v. Office Ctr. Servs., Inc.*, 982 F.2d 89, 93 (3d Cir.1992) (citing 42 Pa. Cons. Stat. Ann. § 7314(b)).  The arbitration award here was issued on April 11, 2007, and Banta's failure to file an application to vacate, modify, or correct the award within thirty days of that date precludes it from raising affirmative defenses to the award in this action which should have been raised in such an application.  *See id.*  This Court quite recently reached the same conclusion in a case presenting nearly identical facts as those presented here.  *See Int'l Union of Bricklayers & Allied Craftworkers, Local 5 v. Inter-State Tile & Mantel Co., Inc.*, 2008 WL 324564, at *3-4 (M.D. Pa. Aug. 6, 2008) (Conner, J.) (granting Local 5's motion for summary judgment in action to enforce arbitration award concerning application of traveling contractor's clause against employer performing work within Local 5's jurisdiction).  Moreover, that the defenses it now seeks to raise are barred by the statute of limitations should come as no surprise to Banta because the separate action it initiated to vacate the award at issue was dismissed as untimely.  *See Banta Tile & Marble Co., Inc. v. Int'l Union of Bricklayers*, 2007 WL 3287388, at

*2 (E.D. Pa. Nov. 5, 2007).  Because Banta has waived its right to assert defenses to the enforcement of the award, the Court must grant summary judgment in favor of Local 5.

Despite the untimeliness of the defenses Banta has raised to enforcement of the award, however, the Court must still address Banta's argument that the dispute at issue was not properly the subject of arbitration.  *See Inter-State*, 2008 324564 at *4.  Local 5 brought the parties' dispute before the arbitrator by invoking the grievance and arbitration provisions of its standard CBA.  Banta, however, is not a signatory to that contract, having terminated its CBA with Local 5 on April 30, 2006.  Banta argues that because the only agreement purportedly being violated to which it is a signatory is the CBA between it and Local 1, any grievance and arbitration arising out of the dispute must be brought by Local 1, not Local 5, and must be brought pursuant to the provisions of the Local 1 CBA, which Local 5 did not follow.  Banta contends therefore that the dispute was not properly before the arbitrator.  This Court recently rejected almost the identical argument in *Inter-State*, and must do so here again for the same reasons.

First, courts have held that where a party seeking arbitration is not a signatory to the contract containing the arbitration provision, that party may nonetheless invoke the arbitration process if it is shown that the signatories

9

intended the party to derive benefits from the agreement.  *See id.* at *4-5 (collecting cases).  In this case, the CBA between Banta and Local 1 clearly intends to confer benefits upon non-signatory unions like Local 5.  The traveling contractors clause of the agreement between Banta and Local 1 requires employers like Banta "to abide by the full terms and conditions of the standard Agreement in effect on the job site area" located "outside of the area covered by this Agreement." When Banta commenced work within Local 5's jurisdiction, it became obligated "to abide by the full terms and conditions of the standard" Local 5 CBA in effect. Banta's agreement with Local 1 thereby conferred benefits on Local 5, and Local 5 may seek arbitration with Banta to enforce these benefits.  *See id.* at *5.  Moreover, by requiring Banta to abide by the "full" terms of the Local 5 CBA, the Local 1 agreement incorporated the grievance and arbitration procedures of the Local 5 CBA which Local 5 utilized in bringing the present matter before the arbitrator. *See id.* at *6.  For these reasons, the Court finds that the dispute was arbitrable and properly brought before the arbitrator, and therefore that the award cannot be vacated on the grounds raised by Banta.

**IV.    CONCLUSION**

For the foregoing reasons, Local 5's motion for summary judgment will be granted and Banta's motion for summary judgment will be denied.  An appropriate order will issue.[2]

---

[2] Also pending is Local 5's motion to strike Banta's answer (Doc. 20) whereby Local 5 argues that the affirmative defenses raised by Banta in its answer must be stricken because Banta answered the complaint before moving to set aside the default entered against it in this action. Given the disposition of the cross-motions for summary judgment and that Banta's defenses are otherwise untimely, Local 5's motion to strike will be denied as moot.